**SO ORDERED.**

**SIGNED this 26th day of April, 2012.**



Dale L. Somers
United States Bankruptcy Judge
_____

Designated for on-line use but not print publication.

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS**

In re:

DJ CHRISTIE, INC.,

DEBTOR.

CASE NO. 11-40764
CHAPTER 11

**MEMORANDUM OPINION AND JUDGMENT DENYING DEBTOR'S
MOTION FOR IMPOSITION OF A STAY UNDER 11 U.S.C. § 105
AGAINST ALAN E. MEYER AND JOHN R. PRATT**

Debtor DJ Christie, Inc. moves for an order under 11 U.S.C. § 105[1] to prohibit

Alan E. Meyer ("Meyer") and John R. Pratt ("Pratt") from obtaining possession of stock

shares of Debtor owned by David J. Christie ("Christie") and collecting on the

---

[1] Future references to Title 11 in the text shall be to the section only.

supersedeas bond.² Both of these actions which Debtor seeks to stay arise from Meyer and Pratt's attempts to execute on a judgment of the United States District Court for the District of Kansas, case no. 07-CV-2230-CM (the "Federal Court Litigation"), in which Meyer and Pratt obtained a judgment against Debtor and two nondebtor individuals, Christie and Alex W. Glenn ("Glenn"), in the amount of $7,170,603.00 plus $100 punitive damages and costs. The result of the requested relief would be to stay the effectiveness of postjudgment orders in the Federal Court Litigation. Because the Court finds that the conditions for issuance of a stay are not present, the Motion is denied.

**Factual Background**

The Motion is one move in an ongoing chess game between Debtor, Christie, and Glenn (collectively the "Christie Interests") and Dovetail Builders 2, L.L.C. ("Dovetail"), Meyer, and Pratt (collectively the "Meyer Interests"). A general understanding of the prior moves of the parties is necessary to fully understand the Motion, as well as other related matters presently before the Court.³

**The Federal Court Litigation**

In 2005, the Christie Interests had conversations with the Meyer Interests about development of a residential housing project in Junction City, Kansas. Disputes arose, and in May 2007, the Meyer Interests sued the Christie Interests in federal court.

---

² Dkt. 125 (referred to in this memorandum as Motion).

³ *See* Pratt's Motion to Withdraw Reference (Adv. No. 11-07043, dkt. 61) and Washington's Motion for Relief From [] Stay (Case No. 11-40764, dkt. 101).

Following ten days of trial and four hours of deliberations, the jury found for the Meyer Interests. On May 22, 2009, a judgment was entered in favor of the Meyer Interests in the amount of $14,696,345.00, plus post judgment interest at the rate of 0.5%, along with costs.[4]

The Christie Interests filed an appeal to the Tenth Circuit Court of Appeals. As a condition for a stay pending the appeal, the district court required the Christie Interests to post a supersedeas bond for $1.125 million (the "Bond"). Washington International Insurance Company ("Washington"), as surety, issued the Bond on January 20, 2010. David J. Christie, individually, is the principal, while Meyer, Pratt, and Dovetail are the judgment creditors. According to Meyer and Pratt, the Bond was set in an amount significantly less than the judgment because Christie and Glenn represented that they had significant nonexempt illiquid assets to pay the judgment.

On April 25, 2011, the Tenth Circuit issued its mandate, affirming liability of the Christie Interests to Meyer and Pratt, but reversing as to Dovetail. On July 15, 2011, after Meyer and Pratt obtained relief from stay,[5] the district court entered the judgment on the remand issues and a final amended judgment in the amount of $7,170,603.00 plus $100

---

[4] *Meyer v. Christie*, Case No. 07-2230, dkt. 297 (D. Kan. May 22, 2009) (Judgment).

[5] DJ Christie, Inc. had filed this bankruptcy case on May 20, 2011. On July 15, 2011, Meyer and Pratt were granted relief from stay for the limited purpose of allowing the district court to finally determine matters pending following the remand from the Tenth Circuit. A request that relief include allowing the district court to determine if the judgment is subject to being satisfied by offset of the assigned Iowa Judgments was denied based upon fact that the bankruptcy case was in its early stages and Debtor should be given an opportunity to negotiate with its creditors. Dkt. 68.

punitive damages and costs in favor of Meyer and Pratt against the Christie Interests (the "Judgment").

Meyer and Pratt undertook proceedings to satisfy the Judgment against nondebtors Christie and Glenn. The Clerk of the District Court entered an order granting Meyer's and Pratt's motion for disbursement of the Bond proceeds, directing payment of the full amount of the Bond to Meyer's and Pratt's attorneys within five days (the "Bond Disbursement Order"). On October 13, 2011, the district court entered a writ of general execution as to Glenn and Christie. The next day, Meyer and Pratt filed a notice in the bankruptcy court that they intended to obtain the stock certificates issued by Debtor to Christie (the "Stock") to take control of Debtor. On November 3, 2011, attorneys for Meyer and Pratt accompanied the United States Marshall to Christie's home to seize the Stock. Christie did not turnover the Stock. Meyer and Pratt filed a motion for contempt in district court against Christie for failure to turnover the Stock and also against Washington for failing to turnover the Bond proceeds.

**The Iowa Judgments**

Much of the controversy in this bankruptcy case, and the focus of the adversary proceeding filed by Debtor,[6] involves the Christie Interests' acquisition of assignments of judgments against Meyer and Pratt, which they propose to use to satisfy the Judgment by offset. On April 29, 2011 and May 2, 4, and 18, 2011, the Christie Interests were

---

[6] *D.J. Christie, Inc. v. Meyer (In re D.J. Christie, Inc.)*, Adv. No. 11-07043.

4

assigned judgments which had been entered against Meyer, Pratt, and others in Iowa on June 3 and 21, 2010, July 7 and 20, 2010, August 17, 2010 and September 3, 2010 (the "Iowa Judgments"). The total amount of the Iowa Judgments is alleged to exceed the Judgment in favor of Meyer and Pratt against the Christie Interests. Some or all of the Iowa Judgments were registered in Dickinson County, Kansas, and a portion of the Iowa Judgments were registered in Jackson, County, Missouri.

On June 8, 2011, the Christie Interests filed garnishment actions in Jackson County, Missouri and Pratt, Kansas, naming Washington, the bonding company, as garnishee. On June 29 and August 5, 2011, garnishment orders issued from Jackson County were served on Washington. On October 18, 2011, Washington filed a motion for relief from stay to allow it to comply with its legal obligations as to the Bond as a result of the federal Bond Disbursement Order and the state garnishment orders.[7]

**Debtor's Chapter 11 case**

Debtor filed for relief under Chapter 11 on May 20, 2011. Debtor's schedules, filed on June 17, 2011,[8] show the following: (A) Real Property: approximately 1.47 acres at the Intersection of I-70 and 57th Street, Kansas City, Kansas, valued at $40,000, not subject to any liens; (B) Personal Property: approximately $2,400.00 cash, over $7.5 million in judgments against Meyer and Pratt, an interest in the Bond by virtue of garnishments, potential malpractice claims against two law firms, and office furniture

---

[7] Case No. 11-40764, Dkt. 101.

[8] *Id*., Dkt. 42.

5

valued at approximately $1,000; (D) Secured Claims: none; (E) Unsecured Priority Claims: none; and (F) Unsecured Claims: approximately $930,000 loans to cover operating expenses, $866,505 of which is owed to Christie and the remainder of which Meyer and Pratt contend are also owed to insiders. Debtor's monthly reports show no ongoing business activity.

On July 29, 2011, Debtor filed an adversary proceeding against defendants Meyer, Pratt, Washington, Glenn, and Christie (the "Adversary Proceeding").[9] The complaint alleges three counts: (1) determination of the validity, extent, and priority of judgment liens held by Meyer and Pratt on the estate's real property; (2) determination of amounts due between Debtor and Meyer and Pratt, based upon setoff of the Iowa Judgments, including cancellation of the Bond because the setoff would satisfy the Judgment in full; and (3) judgment against Meyer and Pratt for the excess of the assigned Iowa Judgments over the amount owed under the Judgment against the Christie Interests. Glenn and Christie filed a cross claim; and Meyer and Pratt filed a counterclaim/cross claim, challenging the availability of offset and seeking declaratory judgments as to the rights to the Bond and the Stock. On January 17, 2011, Pratt filed a motion to withdraw reference of the Adversary Proceeding. The Court's recommendation on that motion is filed separately.

---

[9] *D.J. Christie, Inc. v. Meyer (In re D.J. Christie, Inc.)*, Adv. No. 11-07043.

6

Both Meyer and Pratt filed proofs of claim. Debtor objected to these claims based upon the contention that they are fully satisfied by offsetting the Iowa Judgments.

**DISCUSSION**

Debtor moves for an injunction under §105 against Meyer and Pratt to prohibit them, until the conclusion of the Adversary Proceeding, from: (1) obtaining possession of the Stock; and (2) obtaining the Bond funds. Meyer and Pratt oppose the Motion.

Section 105(a) states:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

This section permits a court to fashion broad relief "to carry out the provisions of" the Bankruptcy Code. The primary concern of a stay under § 105(a) is whether a stay is necessary to protect administration of the bankruptcy estate.

The request for a stay under § 105(a) is essentially a request for injunctive relief, which is discretionary.[10] Four factors must be shown by the movant, who carries the burden of proof: "(1) a substantial likelihood that [the movant] will eventually prevail on the merits; (2) a showing that the movant will suffer irreparable injury unless the injunction issues; (3) proof that the threatened injury to [the movant] outweighs whatever

---

[10] *CCDC Financial Corp. v. Craven (In re CCDC Financial Corp.)*, 143 B.R. 946, 949 (D. Kan. 1992).

damage the proposed injunction may cause the other party; and (4) a showing that the injunction, if issued, would not be adverse to the public interest."[11] Regarding the first factor, probability of success on the merits, the movant must show "the possibility of successfully effectuating a plan of reorganization."[12]

The Court finds no possibility that Debtor will be reorganized in the customary sense. Although this case is filed under Chapter 11, Debtor has no ongoing business and no assets for use in a business. Debtor argues that it will be able to reorganize if offset is allowed. In other words, the reorganization being sought is cancellation of indebtedness by offset. This type of "reorganization" is not dependent upon the bankruptcy code; it is primarily a state law question. The issuance of an injunction is not necessary to protect the administration of Debtor's reorganization.

Debtor's arguments of irreparable harm distinguish between the Bond and the Stock. As to the Bond, the contention is that Debtor may loose a valuable asset, the Bond proceeds, if the stay does not issue. Debtor's legal right to the Bond proceeds is not at all certain. Meyer and Pratt claim a right to the proceeds, since the judgment with respect to which the Bond was posted has been affirmed. Debtor advances several theories as to why it is entitled to the proceeds, the primary one being the contention that the garnishment orders issued by the Missouri Court and served on Washington take precedence over the district court order to release the Bond proceeds to Meyer and Pratt's

---

[11] *Id.*

[12] *Id.* at 949 n.2.

counsel. Washington, because of these competing claims to the Bond proceeds, has requested relief from stay to allow it to comply with the competing orders. The Court agrees with Washington that, since the estate claims an interest in the Bond proceeds, actions to obtain possession or control of the Bond proceeds are stayed under § 362. But by separate order, the Court has denied Washington's motion for relief. In so ruling, the Court has held that Washington is barred by bankruptcy law from disbursing the Bond proceeds to any entity, including a court registry and ordered that Washington shall hold the proceeds pending further order of this Court. Therefore the Count is confident that Washington will not precipitously turn over the proceeds.

As to the Stock, the alleged irreparable harm to be avoided is Meyer and Pratt's ability to control Debtor's bankruptcy case and loss of the tax attribute of a prepetition non-operating loss tax carryover (NOL). The Court rejects the first argument. If the § 105 order does not issue and the district court's turnover order is enforced, Meyer and Pratt will obtain possession of the Stock. But possession does not equate to control. Debtor even states in its brief, "There is no real difficulty if the stock is actually possessed by Meyer and Pratt."[13] Further proceedings would be required in this Court before Meyer and Pratt would be permitted to control these proceedings.[14]

---

[13] Dkt.146 at 8.

[14] Under § 362(a)(3) any act to "exercise control over property of the estate" was stayed by the filing of Debtor's petition. Debtor argued at the hearing on the Motion that, absent relief from stay, this section would prohibit Meyer and Pratt from controlling the Debtor, even if they become stockholders. By not enjoining Meyer's and Pratt's attempts to acquire possession of the Stock, the Court is not making any findings as to the impact of § 362(a)(3). Likewise the Court has not yet

9

As to the NOL, Debtor contends that the transfer of the stock would impair its prebankruptcy NOL carry-forward of $724,246.00, which may be applied advantageously to achieve reduction in future tax liability. According to Debtor, after an ownership change, under I.R.C. § 382, the amount of income to which the NOL carry-forward can be deducted is limited to the product of the fair market value of the corporation's stock multiplied by the average market yield of long term U.S. Treasury Notes. Since Debtor's stock has little, if any value, this would be a significant reduction. However, I.R.C. § 382(l)(5) exempts a bankrupt debtor from the foregoing limitation, if the transfer is to a creditor holding a "qualified indebtedness." Meyer and Pratt argue that a transfer to them would fall within the exemption.

The Court concludes that any injury from harm to Debtor from loss of the NOL carry-forward is speculative. First, Debtor is not going to have a taxable income in the foreseeable future. It has no on-going business and is not attempting to reorganize as a profit making enterprise. Meyer and Pratt could be correct that the exemption would be applicable. The threatened harm to the Debtor is thus minimal. On the other hand, Meyer and Pratt would be harmed. If the § 105 injunction were to issue, Meyer and Pratt would be deprived of the benefit of orders issued by the district court in aid of execution of the Judgment.

---

considered the argument in Debtor's memorandum that the Debtor's bylaws may preclude control by Meyer and Pratt.

10

Case 11-40764    Doc# 176    Filed 04/26/12    Page 10 of 12

In this case, issuance of the requested injunction would be contrary to the public interest. Debtors, although framing the request as an injunction against certain acts of Meyer and Pratt, are in effect asking this Court to enjoin orders issued by the district court. The public interest of comity between the district court and the bankruptcy court would not be served.[15] Debtor by filing this bankruptcy case has elected to litigate issues relating to the satisfaction of the Judgment, including rights to the Bond and the Stock, in the bankruptcy court, even though the issues were or could have been placed before the district court. Having made the choice to involve a second forum, this Court will not now enter an order under § 105 rendering ineffective orders entered in the district court action which Debtor finds objectionable.

**CONCLUSION**

The conditions for issuance of an injunction under 11 U.S.C. § 105 are not present. Debtor's motion for a stay under § 105 is DENIED.

The foregoing constitute Findings of Fact and Conclusions of Law under Rules 7052 and 9014(c) of the Federal Rules of Bankruptcy Procedure which make Rule 52(a) of the Federal Rules of Civil Procedure applicable to this matter.

### JUDGMENT.

Judgment is hereby entered denying the Motion of DJ Christie, Inc. for the Imposition of a Stay under 11 U.S.C. §105 against Alan E. Meyer and John R. Pratt.

---

[15] *See Levy v. Systems Division, Inc.(In re Teknek, LLC)*, 2007 WL 4557813 at * 13 (D.N.D. Ill. 2007).

11

The judgment based on this ruling will become effective when it is entered on the docket for this case, as provided by Federal Rule of Bankruptcy Procedure 9021.

**IT IS SO ORDERED.**

###