**SO ORDERED.**

**SIGNED this 17th day of May, 2013.**



_Dale L. Somers_
Dale L. Somers
United States Bankruptcy Judge

_____

Designated for on-line distribution but not print publication
**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF KANSAS**

In re:

**D.J. CHRISTIE, INC.,**

               **DEBTOR.**

**CASE NO. 11-40764**
**CHAPTER 11**

**MEMORANDUM OPINION AND JUDGMENT**
**APPROVING COMPROMISE AND SETTLEMENT**

The matter before the Court is the Motion of D.J. Christie, Inc. to Approve

Compromise and Settlement (Motion)[1] of the disputes between (1) the Christie Parties,

comprised of Debtor, David J. Christie, and Alexander Glenn, and (2) Alan E. Meyer and

John R. Pratt. Christie, Glenn, Meyer, and Pratt support the Motion.[2] Washington

_____

[1] Dkt. 212.

[2] Dkt. 219 and 220.

International Insurance Company (Washington) filed a limited objection.[3]  Liberty Bank,

F.S.B. (Liberty) objected to the settlement.[4]  Following a hearing,[5] the Motion was placed

under advisement.[6]  Supplemental briefs were requested and filed.[7]  Having carefully

considered the Motion, the pleadings in support and in opposition, the record in this case

and the related adversary proceeding, and the oral arguments of counsel, the Court is now

ready to rule.  For the following reasons, the proposed compromise and settlement is

approved, subject to the conditions stated below.

**FINDINGS OF FACT.**

The origin of the disputes in this case is a failed joint venture to build The Bluffs,

an apartment project in Junction City, Kansas.  It resulted in a damage action, *Alan E.

Meyer, et al. v. David J. Christie, et al.*, Case no. 07-2230, United States District Court

for the District of Kansas (the Federal Litigation).  There are least two related bankruptcy

filings, this case, *In re D.J. Christie, Inc.*, and *In re The Bluffs, LLC*, Case no. 09-11978,

---

[3] Dkt. 218.

[4] Dkt. 217.

[5] Debtor appeared by Tom R. Barnes II of Stumbo Hanson, LLP.  Christie and Glenn appeared by Bruce J. Woner and Justin W. Whitney of Woner, Glenn, Reeder & Girard, P.A.  Washington appeared by Carol Z. Smith of Gilliland & Hayes, P.A.  Meyer and Pratt appeared by Kenneth N. Hickox, Jr., and Robert M. Millimet of Bickel & Brewer.  Liberty appeared by Gordon Gee and David E. Shay of Seigfreid Bingham, P.C.

[6] This Court has jurisdiction pursuant to 28 U.S.C. §§ 157(a) and 1334(a) and (b), and the Standing Order of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's bankruptcy judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective July 10, 1984.  There is no objection to venue or jurisdiction over the parties.

[7] Dkt. 233, 236, & 237.

pending in the Wichita division of this Court. Broadly speaking, the subject of the settlement is satisfaction of the judgment entered in the Federal Litigation in favor of the plaintiffs, Meyer and Pratt.

The Federal Litigation was filed in 2007. By letter agreement dated March 1, 2009, Meyer and Pratt entered into a contingent fee agreement with Bickel & Brewer, a law firm located in Dallas, Texas, for representation in the litigation. On May 22, 2009, at the conclusion of a nine-day trial, a nine-person jury returned its verdict in favor of the plaintiffs, and on September 8, 2009, the District Court issued a judgment in favor of Meyer and Pratt and against the Christie Parties for, among other things, actual damages totaling approximately $7,170,000, punitive damages totaling $100, post-judgment interest, and costs (Initial Federal Judgment).

A notice of appeal was filed. On January 12, 2010, the District Court granted a stay against execution on the Initial Federal Judgment pending appeal, but only upon the deposit of a supersedeas bond in the amount of $1.125 million. On January 15, 2010, a copy of Supersedeas Bond No. 9071367[8] issued by Washington was filed with the District Court. On appeal, the Tenth Circuit affirmed the jury's joint venture lost profits damages award and the Court's punitive damages award to Meyer and Pratt in the total amount of $7,170,703, as well as the joint and several liability of the Christie Parties for that amount. The mandate issued on April 25, 2011.

---

[8] In its objection, dkt. 218, Washington says the number of the Bond is 90713617, but a copy of the Bond attached as Exhibit N to the complaint in Adversary no. 11-7043 shows the number is actually 9071367.

3

Creditors of Meyer obtained substantial interests in the judgment entered in his favor. In June 2010, Meyer assigned payment interests in the judgment in the total amount of $723,508.71 to certain third-party creditors, and filed copies of the assignments in the District Court case (Payment Assignments).

Liberty Bank obtained two judgments against Meyer in Iowa state court, the first on June 30, 2010, and the second on September 15, 2010. Liberty Bank thereafter registered those judgments in the District Court of Johnson County, Kansas, on April 13, 2011, and filed a Kansas state court garnishment action against Christie and Debtor on May 13, 2011 (the Johnson County Proceedings). Liberty Bank served a garnishment order against Christie on May 16, 2011, and one against Debtor on May 19, 2011. Christie and Debtor answered on May 31, 2011, asserting they had no liability because the Initial Federal Judgment, the basis of their liability to Meyer, was not final and because of offset. Liberty Bank thereafter filed a proof of claim against Debtor based on the garnishment order served on Debtor.

On April 29, 2011, and May 2, 4, and 18, 2011, after the Tenth Circuit issued its mandate, the Christie Parties acquired assignments of judgments entered in Iowa courts against Meyer, Pratt, and others on six dates in 2010 (Iowa Judgments). At the time of their acquisition by the Christie Parties, the total amount owed on the Iowa Judgments was $7,402,677.22.

On May 19, 2011, Debtor, Christie, and Glenn registered all but one of the Iowa Judgments in the District Court of Dickinson County, Kansas. The excluded judgment

4

was registered in Dickinson County on June 3, 2011. Also on May 19, 2011, one of the Iowa Judgments in the approximate amount of $3 million was registered in the District Court of Jackson County, Missouri. Garnishment actions against Meyer and Pratt were instituted with respect to each registered judgment in Dickinson County, Kansas, and in Jackson County, Missouri (the Dickinson County Proceedings and the Jackson County, Missouri, Proceeding).

On May 20, 2011, Debtor D.J. Christie, Inc., commenced this Chapter 11 case. Debtor's schedules reported the following: Real property valued at $40,000; personal property valued at $5,000, plus interests of unknown values in the bond provided by Washington, potential legal malpractice claims, and an interest in the Iowa Judgments against Meyer and Pratt, valued at $7.5 million; no secured or priority claims; unsecured claims of $930,005.49, the largest of which was a claim for $866,505.49 held by Christie, an insider; and one unexpired lease of office space. The Initial Federal Judgment was listed as a disputed claim owed to Meyer and Pratt because of Debtor's position that it was more than offset by Meyer and Pratt's liability on the Iowa Judgments. In essence, Debtor has no meaningful liabilities and no assets which are not related to the Initial Federal Judgment. As subsequent proceedings have confirmed, the Chapter 11 case was filed for the purpose of resolving Debtor's (and Christie's and Glenn's) liability to Meyer and Pratt.

On June 15, 2011, after the bankruptcy stay was modified, the Initial Federal Judgment was amended in accord with the mandate issued by the Tenth Circuit, and the

5

amended Federal Judgment was entered in favor of Meyer and Pratt against Debtor, Christie, and Glenn in the amount of $7,170,603.00, plus $100 in punitive damages, plus post-judgment interest. The Initial Federal Judgment as amended is hereafter referred to as the Federal Judgment.

On June 29 and August 5, 2011, Debtor, Christie, and Glenn served Missouri state court garnishment orders on Washington, seeking to recover the supersedeas bond funds in partial satisfaction of the Iowa Judgments.

On July 29, 2011, Debtor commenced an adversary proceeding against Meyer, Pratt, Christie, Glenn, and Washington (Adversary Proceeding).[9] Debtor alleges it is entitled to an offset of its liability on the Federal Judgment based on the Iowa Judgments.[10] Christie and Glenn answered Debtor's complaint, and filed a similar offset crossclaim against Meyer and Pratt based on the Iowa Judgments. On January 9, 2012, the Court granted Liberty's motion to intervene in the Adversary Proceeding based upon Liberty's position that the Christie Parties' assertion that they may offset their liability on the Federal Judgment against the Iowa Judgments impacts Liberty's garnishment liens against Christie and Debtor since those liens are based on Christie's and Debtor's liability to Meyer under the Federal Judgment. On January 17, 2012, Meyer and Pratt filed counterclaims against Debtor and crossclaims against Christie and Glenn for, among

---

[9] Adversary no. 11-7043, dkt. 1.

[10] A "judgment grid" listing the Iowa Judgments and the Federal Judgment is filed in Adv. no. 11-7043, dkt. 47-1.

6

other things, a declaration that the Christie Parties are not entitled to an offset based on the Iowa Judgments. Contentious discovery on the offset issue has commenced.

On March 23, 2012, a Complaint for Interpleader[11] was filed by the liquidating trustee of the Bluffs, LLC (Interpleader Proceeding). It recites that a sale order was entered in the Bluffs's bankruptcy directing the liquidating trustee to distribute proceeds from the sale of assets one-half to J.C. Investment, LLC, and one-half to Meyer and Pratt. But subsequent to the sale order, the liquidating trustee was served with garnishment orders from the District Court of Dickinson County, Kansas, where the Iowa Judgments had been filed, on behalf of Christie, Glenn, and Debtor seeking to garnish all funds to be paid to Meyer and Pratt. The Complaint further alleges that the liquidating trustee is holding $884,168.36 which is subject to the competing claims of the Christie Parties, Meyer, and Pratt. Leave to proceed was granted, and the funds are on deposit with the Clerk of the Bankruptcy Court.

The Christie Parties, Meyer, and Pratt have also been involved in seven lawsuits filed in Platte County, Missouri (Platte County Proceedings). No one has suggested any details about these suits should affect the Court's decision here.

Effective December 6, 2012, Meyer, Pratt, and the Christie Parties agreed to the Settlement Agreement which is the subject of the Motion. Liberty is not a party to the settlement and was excluded from the settlement negotiations. The Settlement

---

[11] Adversary case no. 12-7016, dkt. 1.

Agreement constitutes a full and final compromise and settlement of all claims and liabilities among the parties due and owing in connection with the Adversary Proceeding, the Federal Litigation, the Bluffs Bankruptcy, the D.J. Christie, Inc., Bankruptcy, the Interpleader Proceeding, the Dickinson County Proceedings, the Platte County Proceedings, the Jackson County, Missouri, Proceeding, and the Johnson County Proceedings. The monetary matters settled are the liability of Debtor, Christie, and Glenn to Meyer and Pratt under the Federal Judgment and the liability of Meyer and Pratt to the Christie Parties under the Iowa Judgments. These matters are the central issues in the Adversary Proceeding. Under the Settlement Agreement, as consideration for all the agreements and releases, the settling parties agree that the Iowa Judgments will be offset in full against the Federal Judgment and the Christie Parties agree to pay Meyer and Pratt $1.825 million in cash, which includes release of the interpleaded funds of approximately $884,000. The Court has been advised that the additional required cash will be provided by Christie, apparently obtained through a loan secured by a mortgage on his exempt Kansas residence. The Court has also been advised that the distribution of the cash will be approximately $1 million to Bickel & Brewer, approximately $411,000 in partial satisfaction of the Payment Assignments, and approximately $411,000 to Pratt.[12] Although approval of the Settlement Agreement would not encompass approval of this distribution, the Court surmises that the proposed distribution is an important part of the

---

[12] See dkt. 237 at 3, n. 2 (as to distribution of funds).

8

agreement and will analyze it as if it were included in the proposed Settlement Agreement.

**DISCUSSION**.

### A. STANDARDS FOR APPROVAL OF SETTLEMENTS.

Federal Rule of Bankruptcy Procedure 9019(a) provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Debtor, as a debtor-in-possession under Chapter 11, generally has the rights and powers of a trustee,[13] including the right to move for approval of a compromise and settlement under Rule 9019. The Motion was filed on February 6, 2013. The Debtor also filed a motion to shorten the time for notice, which was granted the next day. The Court ordered objections to be filed by February 19, 2013, and, if any were filed, a hearing would be held on February 25, 2013. Service was made on those listed on Debtor's matrix. Liberty and Washington filed objections, so a hearing was held. The Court heard arguments of counsel; no evidence was offered.

"In order to approve a settlement, the court must determine that it is fair and equitable."[14] The court does not substitute its judgment for that of the trustee, but rather, should "without conducting a trial or deciding the numerous questions of law and fact, 'canvass the issues and see whether the settlement fall[s] below the lowest point in the

---

[13] *See* 11 U.S.C. § 1107(a).

[14] 8 William L. Norton, Jr., and William L. Norton III, *Norton Bankruptcy Law & Practice 3d*, § 167:2 at 167-6 (Thomson Reuters/West 2012).

9

range of reasonableness.'"[15] "The decision of a bankruptcy court to approve a settlement must be 'an informed one based upon an objective evaluation of developed facts.'"[16] The factors to evaluate include "the probable success of the underlying litigation on the merits, the possible difficulty in collection of a judgment, the complexity and expense of the litigation, and the interests of creditors in deference to their reasonable views."[17] These standards are applied to settlements of claims held by the estate and also to claims against the estate.[18] The proponent of the settlement has the burden of persuading the court that it should be approved.[19]

### B.  THE SETTLEMENT AGREEMENT IS FAIR AND EQUITABLE.

The proposed settlement is fair when considered in light of the probability of success on the merits.  The claim against the estate being settled is the  Federal Judgment of approximately $7,170,000 held by Meyer and Pratt against Debtor, Christie, and Glenn, entered after the Tenth Circuit Court of Appeals affirmed the jury trial judgment in part.  The judgment is final.  There is no likelihood that Debtor's liability on the judgment would be reduced if the claim were not settled.  Christie and Glenn, who are

---

[15] *In re Tennol Energy Co.*, 127 B.R. 820, 828 (Bankr. E.D. Tenn. 1991) *(quoting Anaconda-Ericsson, Inc., v., Hessen (In re Teltronics Servs.)*, 762 F.2d 185, 189 (2nd Cir. 1985), *which was quoting Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983)).

[16] *In re Kopexa Realty Venture Co.*, 213 B. R. 1020, 1022 (10th  Cir. BAP 1997) *(quoting Reiss v. Hagmann*, 881 F.2d 890, 892 (10th Cir. 1989)).

[17] *Id*.

[18] *Will v. Northwestern University (In re Nutraquest, Inc*.), 434 F.3d 639, 644-45 (3rd Cir. 2006).

[19] *Tennol Energy*, 127 B.R. at 828.

10

jointly liable, are not in bankruptcy, yet during the pendency of this case, Meyer and Pratt have not attempted execution against them.

The settlement proposes to satisfy the Federal Judgment of approximately $7,170,000 against Debtor by (1) offset of all the Iowa judgments against Meyer and Pratt held by the Christie Parties, (2) application of the approximately $884,000 held in the court registry, which is proceeds from the Bluffs bankruptcy, and (3) payment of approximately $981,000 in cash obtained from a mortgage on Christie's exempt property. Since the face value of the Iowa Judgments held by the estate is approximately $9,312,000, the settlement incorporates a significant discount on the value of these assets.

The complexity of litigating the offset issue supports the settlement. The parties have been litigating the estate's right to set the Iowa judgments off against its liability on the Federal Judgment for almost two years. In addition to the present parties to the Adversary Proceeding, Debtor seeks to add additional parties claiming an interest in the Federal Judgment. As to the merits of the right to offset, the Christie Parties report to the Court that there is little precedent and the prevailing party would be largely dependent upon the equitable discretion of the deciding court.[20] Pratt filed a motion to withdraw reference of the Adversary Proceeding to preserve his right to jury trial. Although the District Court adopted this Court's recommendation that withdrawal be delayed,[21] the full resolution of the offset issue in the Adversary Proceeding would most likely be made

---

[20] Dkt. 219 at 3.

[21] Adv. no. 11-7043, dkt. 82.

more complex by withdrawal of reference and a jury trial on at least some issues.

The difficulty in satisfaction of the Iowa Judgments also supports the settlement. There is no indication that either Meyer or Pratt have any assets with which they could satisfy the Iowa Judgments, rendering the judgments essentially worthless as an estate asset. Their greatest value is as an offset against the estate's liability on the Federal Judgment.

The distribution of the settlement funds to be deposited to the Bickel & Brewer trust account is reasonable. The first $1 million is to be paid to Bickel & Brewer, the holders of claims against Meyer and Pratt for at least 40% of the recovery on the approximately $7 million Federal Judgment, which would be approximately $2.8 million. The amount being applied to the fees is 40% of only a $2.5 million payment, representing a significant compromise of the claim for fees. The remaining $822,0000 of the funds is being divided one-half to Meyer and one-half to Pratt, the joint holders of the Federal Judgment. Meyer's share is being distributed to the holders of Payment Assignments in the original amount of approximately $724,000.

The interests of creditors are not harmed by the settlement. Meyer, Pratt, and Christie are the only significant creditors of the estate. They are parties to the Settlement Agreement and support its approval. No creditors have objected to the settlement. Washington, which is not a creditor, objects only in part and the settling parties have agreed to the changes in the settlement that Washington requests. The only other objecting part is Liberty, but it also is not a creditor of Debtor. Based upon the foregoing,

the Court finds that each of the four factors generally considered when evaluating a proposed settlement are satisfied. Next, the Court must examine the two objections to approval.

### C. WASHINGTON'S OBJECTION DOES NOT PRECLUDE APPROVAL OF THE SETTLEMENT AGREEMENT.

Washington's objection presents no obstacle to approval. It was filed "for the sole purpose of ensuring that the issues pertaining to Washington in the related cases . . . are sufficiently addressed to provide for the discharge and exoneration of the Supersedeas Bond that has been issued by Washington."[22] To this end, Washington requested that any order approving the Settlement include the following requirements:

> 1. That Meyer and Pratt file a satisfaction of the Federal Judgment in the Federal Litigation which expressly provides that the bond is released;
> 2. That the Christie Parties file a pleading releasing the garnishments that have been issued by the Jackson County, Missouri, court to Washington;
> 3. That the parties release any claims they may have against Washington or to the proceeds of the bond; and
> 4. That Debtor file an amended Schedule B omitting the bond as personal property it owns.[23]

At the hearing on the Motion, the parties to the Settlement Agreement stated they had no objection to these requested terms. The Court finds the terms to be appropriate.

### D. LIBERTY'S OBJECTION DOES NOT PRECLUDE APPROVAL OF THE SETTLEMENT AGREEMENT.

#### 1. Liberty's objection and the responses of the Christie Parties.

---

[22] Dkt. 218 at 1.

[23] *Id*. at 3-4 (paraphrased by the Court).

13

The objection of Liberty Bank is more complex. Liberty contends that approval of the Settlement Agreement should be denied "because the settling parties seek to use the proposed Settlement Agreement to evade lawful obligations owed to Liberty Bank and to extend the terms of the proposed Settlement Agreement beyond the parties to that agreement and to actions pending in other courts."[24] Liberty also contends the Settlement Agreement violates provisions of the Bankruptcy Code.

Liberty argues that the settling parties are purporting to determine Liberty's rights against Debtor in the bankruptcy case and against Christie in the Johnson County Proceedings. This position is based upon the Settlement Agreement provisions stating that the settling parties are resolving all claims among the settling parties relating to certain litigation, defined to include the Johnson County Proceedings in which Liberty issued its garnishments against Debtor and Christie. Liberty further argues that the Settlement Agreement wrongfully fails to account for its rights as a garnishee of Debtor and Christie since, while the Settlement Agreement provides for the payment of cash for the benefit of Meyer by the transfer of funds to the trust account of his counsel, the agreement does not recognize Liberty's interest in those funds. Liberty contends its rights are also being impaired by the agreement of the settling parties to "offset in full the Iowa Judgments and the Federal Judgment" and the stipulation that "the Christie Parties acquired a valid setoff defense to the Federal Judgment at the moment the Christie Parties

---

[24] Dkt. 217 at 1.

14

acquired the Iowa Judgments."[25]

In response to Liberty's objection, the Debtor, Christie, and Glenn argue that
(1) Liberty's claim against Debtor does not deserve protection because it is contingent
and (2) Liberty's noncontingent rights are against Meyer, and these rights are not
affected by the Settlement.[26]  Meyer and Pratt argue that Meyer will receive no funds
from the Settlement, since the funds are subject to the lien of Bickel & Brewer and
Meyer's assignments of his interest in the Federal Judgment, all of which have claims
against Meyer's interest that are superior to Liberty's claim.[27]  They further assert that the
Settlement does not purport to determine Liberty's rights.

## 2. Approval of the Settlement Agreement must be denied if Liberty's interests are impaired.

The Court will examine each of Liberty's arguments.  It must do so in light of the
principle that "parties who choose to resolve litigation through settlement may not
dispose of the claims of a third party."[28]  "A 'settlement' between only two parties to a
multi-party lawsuit is not a settlement, and the procedure to approve a compromise under
Fed. R. Bankr. P. 9019(a) cannot be used to impose an injunction on the non-settling

---

[25] *Id*. at 3-4 (*quoting* Settlement Agreement at 5).

[26] Dkt. 219 at 4-5.

[27] Dkt. 220 at 9-15.

[28] *Local No. 93 v. City of Cleveland*, 478 U.S. 501, 529 (1986).

15

parties."[29]

### 3. Since the Court predicts that a Kansas appellate court would hold that Liberty's garnishments did not create a lien in Meyer's interest in the Federal Judgment, Liberty's objections are rejected.

The ground for all of Liberty's objections to the substance of the Settlement Agreement is the premise that by virtue of the garnishment of Debtor and Christie, Liberty holds liens in the consideration to be paid to Meyer for release of the Federal Judgment. Evaluation of Liberty's objections must therefore start with determining whether Liberty holds such liens.

The factual basis for the liens is uncontroverted. Liberty holds judgments entered against Meyer in Iowa for approximately $800,000, which it registered in the District Court of Johnson County, Kansas. In May 2011, Liberty served garnishment orders on Debtor and Christie to collect the judgments. By virtue of such garnishments, Liberty claims an interest in any funds owed by Debtor or Christie to Meyer. The answers of both Debtor and Christie to the garnishments assert that nothing is owed to Meyer on the basis of setoff and because the Federal Judgment was not final when the garnishments were served.

There are three key persons involved in a garnishment: A judgment creditor (garnishor), in this case Liberty; the judgment debtor who owes money to the judgment creditor, in this case Meyer; and the garnishee, who holds money owed to the judgment

---

[29] *Overton's, Inc., v. Interstate Fire & Casualty Ins. Co. (In re Sportstuff, Inc.)*, 430 B.R. 170, 181 (8th Cir. BAP 2010).

16

debtor, in this case Debtor and Christie.[30]  As the garnishor under Kansas law, Liberty

obtained an interest in "all . . . credits and indebtedness due from the garnishee to the

judgment debtor at the time of service of the order" and those becoming due between the

time the order is served and the time the garnishee answers the garnishment order.[31]  In

other words, "[t]he effect of an order of garnishment is to attach those credits and

indebtedness due from the garnishee to the defendant at the time of service of the order

and those becoming due between the time of serving the order of garnishment and the

time of filing the answer of the garnishee."[32]  The garnishment does not reach

indebtedness which is unmatured and contingent when the garnishee's answer is filed.[33]

There are no Kansas appellate decisions addressing whether a judgment is

sufficiently final for garnishment after an appeal is decided but before the judgment is

modified and entered as directed by the appellate court.  But the Kansas Supreme Court

has held that the garnishment of an insurance company to pay a personal injury judgment

is premature where the order was served while the judgment was on appeal, even though

no supersedeas bond had been posted, since the insurance policy required a final

---

[30] *See LSF Franchise REO I, LLC, v. Emporia Restaurants, Inc.*, 283 Kan. 13, 20, 152 P.3d 34, 41 (2007).

[31] K.S.A. 60-732 (c)(1) and (2).

[32] *Curiel v. Quinn*, 17 Kan. App. 2d 125, 129, 832 P.2d 1206, 1209 (1992), *(quoting Washburn v. Andrew*, 209 Kan. 436, 438-39, 496 P.2d 1367, 1369 (1972)).  *See also LSF Franchise REO*, 283 Kan. at 23, 152 P.3d at 42 ("Implicit in the statute's language is a requirement that, in order for property to be garnished, it must first be actually owned by or owed to the judgment debtor.").

[33] *Curiel v. Quinn*, 17 Kan. App. 2d at 129.

judgment as a condition of liability.[34]  The Kansas Court of Appeals has held that an order of garnishment to reach monthly payments due under a property settlement agreement reached those payments due between the time the garnishment was served and the date of the answer but not those due thereafter, which were unmatured and contingent when the answer was filed.[35]

Liberty served its garnishment order against Christie on May 16, 2011, and against Debtor on May 19, 2011.  Both garnishees answered on May 31, 2011, denying they owed Meyer any money because of their right to offset and because the Federal Judgment was not final.  As of May 31, 2011, the Initial Federal Judgment had been entered, execution of the judgment had been stayed pending appeal, and the mandate of the Tenth Circuit affirming the judgment in part had been issued, but the amended Federal Judgment was not entered by the District Court until June 15, 2011.

The Court finds that the answers of Debtor and Christie asserting the non-finality of the Federal Judgment state a valid defense to the garnishments.  For purposes of the Kansas garnishment statutes, as of the date of the initiation of the garnishment proceedings and the date of the answers, there was no debt owed to Meyer by either Debtor or Christie.  Meyer could not have executed on the Federal Judgment.  The Court predicts that a Kansas appellate court would hold that for purposes of garnishment, as of May 16, 19, and 31, 2011, the Federal Judgment debt was unmatured and not subject to

---

[34] *Lechleitner v. Cummings*, 160 Kan. 453, 457-60, 163 P.2d 423 (1945).

[35] *Curiel v. Quinn*, 17 Kan. App.2d at 127-29, 832 P.2d at 1206.

garnishment[36] — that on those dates the liability of Debtor and Christie to Meyer did not satisfy the Kansas statutory requirement of an "indebtedness due" or "indebtedness becoming due."[37]

The Court therefore holds that Liberty has no interest in either Debtor's or Christie's obligations to Meyer under the Federal Judgment. All of Liberty's objections to the substance of the Settlement Agreement are predicated on its claimed garnishment liens. Since that predicate is erroneous, the Court rejects Liberty's objections.

**4. Alternatively, if Liberty holds garnishment liens in the funds owed to Meyer under the Federal Judgment, those liens are inferior to the liens of Bickel & Brewer and Meyer's assignees.**

**a. Analysis of priority of liens.**

Alternatively, the Kansas Supreme Court could find the Federal Judgment was sufficiently final on May 16, 19, and 31, 2011, for garnishment liens to attach to Debtor's and Christie's obligations to Meyer thereunder. The Tenth Circuit had entered its mandate on April 25, 2011, so there was no doubt that liability would exist. The question would then become whether those garnishment liens would have priority over Bickel & Brewer's attorney lien or the interests of Meyer's assignees.

---

[36] There is no evidence in the record that Liberty requested or obtained an order in the garnishment proceedings to protect its priority by imposing a stay until execution on the Federal Judgment was no longer stayed. *See Shawn v. 1776 Corp.*, 787 P.2d 183 (Colo. App. 1989) (Holding under Colorado law, garnishment court did not err in ordering stay of garnishment proceedings which were initiated while garnishee's judgment rights were subject to stay of execution. Order relieved garnishor from having to constantly monitor outcome of garnishee's appeal to determine proper time to re-institute garnishment proceedings and preserved garnishor's priority.).

[37] See K.S.A. 60-732 (c)(1) and (2).

Bickel & Brewer's attorney lien is governed by Texas law. Under Texas law, an attorney lien created by a contingent fee agreement does not attach until the contingency is satisfied.[38] "Once the contingency occurs, the attorney has a lien on the judgment or settlement securing his services, and 'an attorney's lien is paramount to the rights of the parties in the suit, and is superior to other liens on the money or property involved, subsequent in point of time.'"[39] But it is unclear under Texas law when the contingency occurs.[40] At a minimum "the contingency cannot occur before the judgment is affirmed on appeal or when the time for filing an appeal has lapsed."[41]

Meyer and Pratt contend that the contingency was removed on April 25, 2011, when the mandate was issued by the Tenth Circuit. For purposes of determining the priority of liens, assuming that Liberty's garnishment liens attached in May 2011, the Court agrees. If the entry of the mandate rendered the debts owed to Meyer sufficiently mature to support garnishments under Kansas law, the Court finds it only reasonable that the Federal Judgment was sufficiently final for the attachment of the attorney lien. Since the entry of the mandate on April 25, 2011, predates the garnishments, Liberty's liens would be inferior to that of Bickel & Brewer.

The other competing interests in the Federal Judgment arise from Payment

---

[38] *Marré v. United States*, 117 F.3d 297, 308 (5th Cir. 1997) (*citing In re Willis*,143 B.R. 428, 431 (Bankr. E.D. Tex. 1992)).

[39] *Id*. (*quoting Willis*, 143 B.R. at 432).

[40] *Marré v. United States*, 117 F.3d at 308, n. 19.

[41] *Id*.

Assignments granted by Meyer to certain third-party creditors in June 2010 in the aggregate amount of $723,508.712.  In response to Liberty's objection to the Settlement Agreement,[42] Meyer and Pratt argue that the validity and priority of the Payment Assignments are controlled by Iowa law, that under Iowa law an assignment of a right in the thing assigned is absolute and entitled to priority as of the date of the assignment, and that Iowa law permits the assignment of rights in a judgment that may be recovered in a pending action or a future judgment.[43]  Under this analysis, the Payment Assignments granted interests in the Federal Judgment that are superior to any interest of Liberty. Liberty has not contested this analysis.[44]  For purposes of determining the priority of liens assuming that Liberty's garnishments were effective, the Court will regard the Payment Assignments as granting interests in the Federal Judgment as of June 2010, before the attachment of the lien of Liberty, if any, and the lien of Bickel & Brewer.

To summarize, the Court rules that if Liberty holds garnishment liens in funds payable to Meyer under the Federal Judgment, its liens are inferior to the interests of the Payment Assignments and the attorney lien of Bickel & Brewer.

### b.  Analysis of Liberty's objections, as the holder of third-priority liens in Debtor's obligations under the Federal Judgment.

---

[42] Dkt. 220 at 13-14.

[43] Dkt. 220 at 13-14.

[44] The Christie Parties also do not challenge this analysis in their documents addressing the Settlement Agreement.  However, it should be noted that in a proposed amended complaint attached to a pending motion for leave to amend the Adversary Complaint (Adv. No. 11-7043, dkt. 106-1 at 10), the Christie Parties do allege that at least some of the Payment Assignments should be set aside.  Presumably, if the Settlement Agreement is not approved, these allegations will be pursued.

**(i). Liberty does not have a superior interest in the funds being paid to the Bickel & Brewer trust account under the Settlement Agreement.**

The Court first considers whether the Settlement Agreement deprives Liberty of funds being paid for the benefit of Meyer to which it is entitled as the garnishor of Debtor or Christie. At the request of the Court, Liberty filed a supplemental brief[45] addressing its claimed right in the settlement funds, the $1.825 million being paid to Bickel & Brewer's trust account. It argues that because under the Settlement Agreement the Federal Judgment is satisfied by offset, the funds being paid are not in satisfaction of the Federal Judgment, but are payments under the Settlement Agreement, to which it has first priority rights. As to the lien of Meyer and Pratt's counsel, Liberty's priority is alleged to arise because counsel's right to payment under the Settlement Agreement is contingent until it is approved by the Bankruptcy Court, and under Texas law, which applies to the attorney lien claim, the lien does not attach until the contingency is removed. As to the holders of the Payment Assignments, who will also receive a portion of the payment, priority is alleged because the assignments are only of Meyer's interest in the Federal Judgment, which does not include the funds being paid under the Settlement Agreement.

The Court rejects these arguments. The funds being paid under the Settlement Agreement are a portion of the consideration for compromise of the Federal Judgment. The "offset in full" language means the Iowa Judgments are fully satisfied by offset. The

---

[45] Dkt. 233.

consideration for the compromise of the Federal Judgment is that offset, plus the other consideration stated, including the $1.825 million payment. Meyer and Pratt's supplemental brief states, "the Settlement Agreement itself unambiguously and expressly establishes that the settling parties' intent is to provide remuneration to Meyer and Pratt *because of,* and *in order to compromise* the Christie Parties' liability on, the *Judgment*."[46] Liberty's argument rests exclusively upon an erroneous construction of the Settlement Agreement. The Court therefore finds that Liberty has no interest in the settlement funds under the theory presented.

Although Liberty in its supplemental brief did not address the question whether it has a superior interest in the settlement funds assuming they are consideration for satisfaction of the Federal Judgment, the Court will address this question. Assuming Liberty's garnishments of Debtor and Christie were valid, Liberty would have an interest in payments made by either of these parties in satisfaction of the Federal Judgment. The payments under the Settlement Agreement are comprised of approximately $884,000 from the proceeds of the sale of the Bluffs and $941,000 contributed by Christie. Those funds are to be distributed as follows: approximately $1 million to Bickel & Brewer, $411,000 in partial satisfaction of the Payment Assignments, and approximately $411,000 to Pratt.[47]

The Court finds that Liberty, assuming valid garnishments, nevertheless does not

---

[46] Dkt. 237 at 13.

[47] Dkt. 237 at 5 (as to distribution of funds).

23

have a claim to these funds that is sufficient to deny approval of the Settlement Agreement. First, neither Debtor nor Christie have any interest in the interpleaded funds which the Bluff's bankruptcy judge had ordered should be distributed to Meyer and Pratt.[48] The Debtor's and Christie's only claim to the interpleaded funds arises from the Dickinson County garnishments in aid of collection of the Iowa Judgments. But, since Debtor and Christie have agreed in the Settlement Agreement that the Iowa Judgments are offset in full against the Federal Judgment, those garnishments are of no force and effect.

As to the funds provided by Christie (approximately $941,000) for payment on the Federal Judgment, Liberty's garnishment of Christie's indebtedness to Meyer attached. But it was third in priority, after the attorney lien and the Payment Assignments. The settling parties (including Meyer) have agreed that Meyer is not entitled to any of the funds, since there is nothing left for him after the payment of the attorney lien and partial payment of the Payment Assignments. As discussed above, the Court finds that the negotiated values assigned to the interests that are superior to Liberty's interest are just and reasonable. They consume all of the funds which would otherwise be paid to Meyer. Liberty's interest in Christie's payment of his liability to Meyer under the Federal Judgment has no value and is therefore not impaired by the settlement.

### (ii). The Settlement Agreement does not improperly impact Liberty's rights in the Johnson County Proceedings.

---

[48] *See In re The Bluffs, LLC*, Case no. 09-11978, Dkt. 648 at 2-4; *see also* Adv. no. 12-7016, Dkt. 1 at 3-4.

The Court next considers whether the Settlement Agreement improperly impacts Liberty's rights in the Johnson County Proceedings. The Settlement Agreement purports to release all parties to the agreement — Debtor, Christie, Glenn, Meyer, and Pratt — from liability, to resolve all issues for all time, and to enjoin any attempt by any party in the Johnson County litigation "to collect from any of the other parties therein any obligation arising from or related to the subject matter of" the Johnson County litigation.[49]

The Settlement Agreement injunction does not apply to Liberty, since it is not a party to the agreement. Liberty asserts that the Johnson County District Court entered orders against Christie which have not been satisfied.[50] Future consideration of these orders by the Johnson County District Court is not enjoined as part of the settlement. Likewise, Liberty's rights to enforce its judgments against Meyer are not enjoined.

But the Settlement Agreement does resolve all liability of Debtor and Christie to Meyer, and therefore, Liberty as garnishor of Debtor and Christie will be unable to recover its judgments against Meyer from Debtor and Christie as garnishees. Liberty understandably objects that its rights are determined by an agreement to which it is not a party. But Liberty has provided no authority that parties may not resolve their respective obligations by agreement even though that resolution may impact a garnishor.

Contrary to Liberty's objection, the nature of garnishment dictates that a garnishor's rights may be altered. Liberty as garnishor stepped into the shoes of its debtor

---

[49] Dkt. 212-1 at 5.

[50] Dkt. 217 at 8-10.

25

(Meyer), taking only what he could enforce.[51]  Liberty obtained no right to interfere with

the relationship between the defendant (Meyer) and the garnishees (Debtor and Christie).

> "Proceedings in garnishment do not change the legal relations and rights existing between the defendant and the garnishee, nor place the plaintiff in a more favorable position for the enforcement of a claim against the garnishee than would be the defendant in an action brought by him for the same cause; nor can any one be held in such proceedings to the payment of a liability which the defendant could not himself enforce because of existing equities and set-offs."[52]

Liberty's objection that the Settlement Agreement impermissibly alters its rights in the

Johnson County Proceedings is rejected.

### (iii).  The stipulation in the Settlement Agreement that all the Iowa Judgments have been offset against the Federal Judgment does not improperly impact Liberty's interests.

Next, the Court considers whether the portion of the Settlement Agreement

stipulating that all the Iowa Judgments have been fully offset against the Federal

Judgment improperly impacts Liberty's interests.  When arguing that it does, Liberty

contends that its garnishment of Christie was effective before the Christie Parties'

acquisition of at least of one of the Iowa Judgments, so that "the total of the amounts of

the Iowa Judgments against Meyer that had been assigned to the Christie Parties was less

---

[51] *LSF Franchise*, 283 Kan. at 21-22, 152 P.3d at 41-42.

[52] *Harpster v. Reynolds*, 215 Kan. 327, 330, 524 P.2d 212 (1974) (*quoting Kansas Investment Co. v. Jones*, 2 Kan. App. 638, syl. ¶ 1, 42 P. 935 (1895)); *see also Curiel v. Quinn*, 17 Kan. App.2d at 129, 832 P.2d at 1209 (*quoting Harpster's* quotation of *Kansas Investment Co. v. Jones* syl. ¶ 1).

than the amount of the Federal Judgment owed by the Christie Parties to Meyer."[53]  The

last assignment of the Iowa Judgments occurred on May 18, 2011.[54]  Liberty's

garnishments were served on May 16 and 19, 2011, and the answers were filed on May

31, 2011, after the assignment of the final Iowa Judgment.  Liberty is claiming that

because of the garnishment, its rights to the funds owed on the Federal Judgment cannot

be offset against the last of the assigned Iowa Judgments.  No supporting authority is

provided.

The Court again rejects Liberty's argument as conflicting with general principles

of garnishment.  As noted above, Liberty as garnishor obtained no right to interfere with

the relationship between the defendant (Meyer) and the garnishees (Debtor and Christie).

They agreed to the offset in full.  Further, the statutory recognition of the offset defense[55]

does not limit the claims that can be offset to those which existed on the date of service of

the garnishment, or even the date of the answer.  The last Iowa assignment occurred

before the answer date.  The Settlement Agreement's consideration of all of the assigned

Iowa Judgments as available for offset is therefore consistent with the defense that Debtor

and Christie could assert in Liberty's garnishment proceedings.

### c.  Approval of the Settlement Agreement will not be withheld because it allegedly violates portions of the Bankruptcy Code.

---

[53] Dkt. 233 at 11.

[54] *See* Dkt. 220 at 7.

[55] K.S.A. 60-719.

Liberty also contends that the Settlement Agreement should not be approved because Debtor has breached its statutory obligations under the Bankruptcy Code in three respects: it has failed to provide adequate protection under § 363 in conjunction with the sale of assets outside the ordinary course; it has submitted a de facto plan of reorganization without following the procedures under § 1129; and it has violated its statutory duty to act for the benefit of the estate by agreeing to a settlement for the benefit of the individual interests of Christie. The Court rejects these arguments under the unique circumstances of this case.

When arguing that it is entitled to adequate protection under § 363(e), Liberty fails to identify the property interest of the estate which is purportedly being used, sold, or leased by Debtor. Assuming that Liberty's attempted garnishment of Debtor was effective, the interest in which Liberty acquired an interest was Debtor's obligation to Meyer under the Federal Judgment. That obligation constitutes a claim against the estate by Meyer, not an estate property interest subject to use, sale, or lease under § 363(e). The adequate protection provisions of § 363 are not applicable. If one considers the lien as attaching to the consideration paid to Meyer on the Federal Judgment, adequate protection still is not required. As discussed above, the consideration provided by Debtor was offset of the Iowa Judgments. When viewed as property of the estate, the Iowa Judgments had no value because they could not be collected from Meyer or Pratt. The cash payment from the sale of the Bluffs and the funds contributed by Christie are not property of the estate.

The Court finds that the Settlement Agreement is not a de facto plan of reorganization for which approval is sought without fulfilling the applicable procedural protections and adhering to the absolute priority rule. The Settlement Agreement resolves the adversary proceeding and thereby satisfies the claims of Meyer and Pratt against the estate. But except for the offset of the Iowa Judgments, no distribution of estate property is involved. The estate property applied to the claims of Meyer and Pratt would have no value to the creditors of the estate who are not parties to the Settlement Agreement. The competing claims at issue are those asserting interests in the proceeds of Meyer's rights in the Federal Judgment, not claims that are against the estate.

Finally, the Court finds that Debtor has not violated its debtor-in-possession obligations. Liberty argues that Debtor has abandoned its role as a fiduciary to represent the individual interests of Christie by absolving him of the consequences of allegedly contemptuous actions in the Johnson County garnishment proceedings. But as previously discussed, the injunction included in the Settlement Agreement cannot be construed to preclude Liberty from seeking relief in the Johnson County Proceedings for the alleged contempt.

**CONCLUSION.**

The Court approves the Settlement Agreement as fair and equitable, subject to the following:

1. That Meyer and Pratt file a satisfaction of the Federal Judgment in the Federal

Case 11-40764    Doc# 246    Filed 05/17/13    Page 29 of 31

Litigation which expressly provides that Supersedeas Bond No. 9071367[56] (Bond) issued by Washington is discharged and exonerated;

2. That the Christie Parties file a pleading releasing the garnishments that have been issued against Washington in the Jackson County, Missouri, Circuit Court Case no. 1116-CV-13164 (11-EXEC-6844 and 11-EXEC-7710);

3. That the Christie Parties and Meyer and Pratt release any claims they may have against Washington or to the proceeds of the Bond;

4. That Debtor file an amended Schedule B omitting the Bond as personal property it owns; and

5. That the Settlement Agreement shall be construed not to enjoin proceedings by Liberty Bank in Johnson County District Court Case nos. 11-CV-3218 and 11-CV-3216 seeking to recover its judgments against Meyer, except to the extent that such proceedings are a collateral attack upon the Settlement Agreement, which finally determines the rights and obligations of Meyer, Christie, and Debtor with respect to the Federal Judgment, the Iowa Judgments, and all other matters addressed therein.

**JUDGMENT.**

The foregoing constitutes Findings of Fact and Conclusions of Law under Rules 7052 and 9014(c) of the Federal Rules of Bankruptcy Procedure which make Rule 52(a) of the Federal Rules of Civil Procedure applicable to this matter. Based on those findings

---

[56] As noted earlier, in its objection, Washington gave 90713617 as the number of the Bond, but a copy of the Bond attached to the complaint in Adv. 11-7043 shows the number is actually 9071367.

and conclusions, judgment is hereby entered granting the Motion of D.J. Christie, Inc., to Approve Compromise and Settlement.  As provided by Bankruptcy Rule 9021, this judgment will become effective when entered on the docket under Bankruptcy Rule 5003.

**IT IS SO ORDERED.**

# # #