SO ORDERED.

SIGNED this 4th day of March, 2015.



_Dale L. Somers_
Dale L. Somers
United States Bankruptcy Judge

---

**For online use, but not print publication**
**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF KANSAS**

In re:

D.J. CHRISTIE, INC.,

               DEBTOR.

CASE NO. 11-40764
CHAPTER 11

**MEMORANDUM OPINION AND JUDGMENT**
**APPROVING SETTLEMENT AFTER REMAND**

This matter is before the Court following an appellate remand for further

consideration of the propriety of a settlement involving Debtor D.J. Christie, Inc. (Debtor)

and various other parties (the Settlement Agreement). In a Memorandum Opinion and

Judgment Approving Compromise and Settlement signed on May 17, 2013, this Court

approved the settlement of the disputes between (1) the Christie Parties, comprised of

Debtor, David J. Christie, and Alexander Glenn, and (2) Alan E. Meyer and John R.

Pratt.[1]  Liberty Bank, F.S.B., opposed the Settlement Agreement and appealed the Court's approval.

In a Memorandum and Order dated December 19, 2013, District Judge Carlos Murguia reversed in part the approval of the Settlement Agreement and remanded the matter to this Court for further proceedings.[2]  Specifically, he reversed the holding that Liberty Bank did not hold valid garnishment liens in the Federal Judgment and held that additional findings of fact were required addressing the priority of Liberty Bank's liens. The District Court stated:

> Although the bankruptcy court made findings regarding the priorities of different lien holders in the settlement funds (i.e., the $1.825 million), it made no findings regarding priorities in the $7,170,703.00 affirmed by the Tenth Circuit.  It likewise did not make any findings that the over $7.1 million was insufficient to cover all of the competing claims.  By failing to make these findings, the bankruptcy court could not assess the impact of the "offset in full" language to Liberty Bank.  In other words, by failing to analyze the priorities in those funds, the bankruptcy court essentially made a de facto determination that all of the Iowa Judgments had priority over Liberty Bank.  The record does not clearly support this finding.  Nor does the record make clear the amount of the Iowa Judgments that had priority to Liberty Bank's garnishment liens (particularly the lien against Christie). Without this factual foundation, neither the bankruptcy court nor this court can determine the impact to Liberty Bank of the "offset in full" language.  Similarly, absent these findings, both courts lack a sufficient factual foundation to determine whether the Settlement Agreement is fair and equitable.
>     The court also disagrees with the bankruptcy court's

---

[1] Doc. 246, *available on* Westlaw at 2013 WL 2153188.

[2] Doc. 283, *available on* Westlaw at 2013 WL 6729830.

2

rationale that Liberty Bank is not impacted by the "offset in full" language because it lacks the right to interfere with the relationship between Meyer, Debtor, and the Christie Parties. Assuming the bankruptcy court is correct that Liberty Bank lacks the right to interfere, this fact does not necessarily mean those parties can rearrange the priority of valid liens to settle claims. The court therefore reverses in part, vacates the bankruptcy court's order approving the Settlement Agreement, and remands for further proceedings consistent with this order. Specifically, the bankruptcy court should consider Liberty Bank's priority in the $7,170,703.00 affirmed by the Tenth Circuit in deciding whether to approve the Settlement Agreement.[3]

This Court held a status conference on January 27, 2014, and set deadlines for the parties to files briefs addressing what issues were to be determined on remand. After reviewing the District Court's Order and those briefs, the Court concluded that it had been directed by the District Court (1) to make detailed findings of fact as to the priority of interests in the Federal Judgment and (2) to determine, in light of those priorities, the impact on Liberty Bank of the "offset in full" provision of the Settlement Agreement and whether the Settlement Agreement is fair and equitable. The parties conducted discovery, filed joint Stipulations of Fact, and briefed the foregoing two issues. The Court heard argument on February 23, 2015. In accord with the Scheduling Order filed on January 5, 2015,[4] the matter is under consideration without a trial or further hearings.

**DETAILED FINDINGS OF FACT RELATING TO THE PRIORITY OF LIBERTY BANK'S LIENS.**

---

[3] Doc. 283 at 8-9.

[4] Doc. 329.

The Stipulations of Fact[5] are incorporated herein by reference. They provide the basis for determining the priority of Liberty Bank's liens. For purposes of the following discussion, the Court summarizes those stipulations, augmented by undisputed background facts, as follows.

A failed joint venture to build an apartment complex in Junction City, Kansas gave rise to litigation, *Alan E. Meyer, et al., v. David J. Christie, et al.*, Case no. 07-CV-2230, in the United States District Court for the District of Kansas (the Federal Litigation). Meyer and Pratt, plaintiffs in the Federal Litigation, entered into contingency fee agreements with Bickel & Brewer on or about March 5, 2009, and with Gaddy Geiger & Brown, P.C., on or about August 10, 2009. Plaintiffs prevailed at trial. Defendants appealed, and the Tenth Circuit affirmed an actual damages award[6] and a $100 punitive damages award, resulting in a judgment for $7,170,703, plus post-judgment interest (the Federal Judgment) in favor of Meyer and Pratt against the Christie Parties. The mandate issued on April 25, 2011. Remanded issues were resolved by the District Court and a final judgment was entered.

Prior to April 11, 2011, Meyer assigned a total of $723,508.71 of his interest in the Federal Judgment to third-party creditors. Prior to April 11, 2011, Pratt assigned a total of $2,286,000 of his interest in the Federal Judgment to third-party creditors.

---

[5] Doc. 323.

[6] The jury found that Meyer and Pratt "lost $7,170,603 in connection with their interest in the joint venture." *Meyer v. Christie*, 634 F.3d 1152, 1156 (10th Cir. 2011).

4

Liberty Bank obtained two judgments against Meyer (but not Pratt) in two different Iowa state courts. The first was entered on June 30, 2010, in the amount of $811,959.66 plus interest from and after May 11, 2010, at $326.8822 per day. The second judgment was entered on September 15, 2010, in the amount of $136,124.45 plus interest from and after September 3, 2010, at the rate of $32.40 per day. On April 13, 2011, both of the judgments in favor of Liberty Bank were registered in the District Court of Johnson County, Kansas. On May 16, 2011, orders of garnishment for both judgments were served on David J. Christie. On May 19, 2011, orders of garnishment for both judgments were served on Debtor.

Between April 29, 2011, and May 18, 2011, the Christie Parties obtained assignments of six judgments entered in various Iowa state court proceedings against Meyer. As of May 16, 2011, the amount Meyer owed on the five judgments which were assigned to the Christie Parties was $6,883,706.03. As of May 19, 2011, after the assignment of the sixth judgment on May 18, 2011, the amount Meyer owed was $7,505,183.85. Interest accrued on the judgments so that as of May 31, 2011, the amount Meyer owed was $7,543,500.43.

On May 20, 2011, Debtor commenced this bankruptcy case. Eleven days later, on May 31, 2011, David J. Christie and Debtor filed separate answers to the garnishments by Liberty Bank, denying that any money was owed to Meyer. Christie's answer stated:

> I hold no money and am not indebted to the judgment debtor,
> rather the judgment debtor is indebted to me. As of May 31,
> 2011, Alan E. Meyer and John R. Pratt hold a non-final claim

5

> for $7,244,300.80 against D.J. Christie, Inc., Alexander W.
> Glenn, and me. As of May 31, 2011, D.J. Christie, Inc,
> Alexander W. Glenn I hold judgments against Alan E.
> Meyer and John R. Pratt in the amount of $7,543,500.43,
> which when offset against the $7,244,300.80 results in
> $299,199.63 owed by Alan E. Meyer and John R. Pratt to D.J.
> Christie, Inc., Alexander W. Glenn and me.[7]

Debtor's answer was essentially the same.[8] The record does not contain any reply by Liberty to the answers of the garnishees.

On July 29, 2011, Debtor commenced an adversary proceeding against Meyer, Pratt, Christie, Glenn, and the insurance carrier who had provided a bond pending the appeal to the Tenth Circuit (Adversary Proceeding).[9] Debtor alleged it was entitled to an offset of its liability on the Federal Judgment against the Iowa Judgments. Christie and Glenn answered Debtor's complaint, and filed a similar offset crossclaim against Meyer and Pratt based on the Iowa Judgments. On January 9, 2012, the Court granted Liberty Bank's motion to intervene in the Adversary Proceeding based upon the bank's position that the Christie Parties' assertion that they may offset their liability on the Federal Judgment against the Iowa Judgments impacted Liberty Bank's garnishment liens. On January 17, 2012, Meyer and Pratt filed counterclaims against Debtor and crossclaims against Christie and Glenn for, among other things, a declaration that the Christie Parties were not entitled to an offset based on the Iowa Judgments. Contentious discovery on the

---

[7] Doc. 323-13.

[8] Doc. 323-14.

[9] Adversary no. 11-7043, doc. 1.

offset issue commenced.

Effective December 6, 2012, Meyer, Pratt, and the Christie Parties (the Settlement Parties) agreed to the Settlement Agreement, this Court's approval of which was reversed in part by the District Court. Liberty Bank is not a party to the Settlement Agreement and was excluded from the settlement negotiations. The essence of the agreement is the full offset of the Iowa Judgments against the Federal Judgment, a payment by the Christie Parties of $1.825 million in cash to Meyer and Pratt, the release of all liabilities of the Christie Parties to Meyer and Pratt, and the release of all liabilities of Meyer and Pratt to the Christie Parties.

## ANALYSIS OF THE PRIORITY OF LIBERTY BANK'S INTEREST IN THE FEDERAL JUDGMENT.

The Court will first address the priority of Liberty Bank's interest, as the garnishor of Christie and Debtor, in the Federal Judgment before the Settlement Agreement was reached. At least for purposes of this issue, all the parties agree that the first two priorities in the Federal Judgment are held by (1) Plaintiffs' attorneys by virtue of the 2009 contingency fee agreements and (2) the third-party creditors of Meyer and Pratt to whom they assigned interests prior to April 11, 2011. Liberty Bank estimates that the amount remaining due to Meyer and Pratt under the Federal Judgment after payment of these two claims is $1,292,913.09, considering both Meyer's and Pratt's interests. Alternatively, the amount due to Meyer, considering only Meyer's one-half interest in the judgment, one-half of the attorneys' fees, and the assignments by Meyer, but not Pratt, the

amount is estimated to be $1,427,702.19.[10]  The dispute is whether Liberty Bank, the

holder of two judgments against Meyer, as the May 16, 2011 garnishor of David J.

Christie and the May 19, 2011 garnishor of Debtor has priority as to the remainder of the

Federal Judgment over the Christie Parties, as the assignees of the Iowa Judgments

against Meyer and others.

The Settlement Parties (the Christie Parties[11] and Meyer and Pratt[12]) support the

offset of the amount Meyer owes to the Christie Parties under the Iowa Judgments against

the amount the Christie Parties owe to Meyer under the Federal Judgment.  Relying upon

Kansas garnishment statutes and case law, the Settlement Parties assert that their right to

offset the Iowa Judgments against the Federal Judgment has priority over the interest of

Liberty Bank in the Federal Judgment under its garnishments.

K.S.A. 60-732 applies when a garnishment is to attach intangible property other

than earnings of the judgment debtor.  Assuming an order of garnishment in the proper

form is served on the garnishee, it attaches "[a]ll intangible property, funds, credits or

other indebtedness belonging to or owing the judgment debtor, other than earnings, which

is in the possession or under the control of the garnishee, and all such credits and

indebtedness due from the garnishee to the judgment debtor at the time of service of the

---

[10] When making these estimates, Liberty Bank calculates the attorneys' fees as 40% of the
Federal Judgment.  Doc. 332 at 7.

[11] Doc. 333.

[12] Doc. 335.

8

order."[13]  It also attaches all such property coming into the possession or control of the garnishee between the date of service and the date of the garnishee's answer.[14]  But, as pointed out by the Christie Parties:

> Proceedings in garnishment do not change the legal relations and rights existing between the defendant and the garnishee, nor place the plaintiff in a more favorable position, for the enforcement of a claim against the garnishee, than would be the defendant in an action brought by him for the same cause; nor can any one be held in such proceedings to the payment of a liability which the defendant could not himself enforce, because of existing equities and set-offs.[15]

According to the Settlement Parties, because when the garnishment orders were served on Debtor and Christie, the Iowa Judgments against Meyer had already been acquired by the Christie Parties, the garnishees' liability to Meyer under the Federal Judgment was already reduced by the amount Meyer owed to the Christie Parties under the Iowa Judgments.  In other words, when Liberty Bank stepped into the shoes of Meyer, the priority of Liberty Bank's rights as a garnishor were subject to the availability of offset.

The Settlement Parties find support for the priority of the right of offset in two

---

[13] K.S.A. 60-723(c)(1).

[14] K.S.A. 60-723(c)(2).

[15] *Investment Co. v. Jones*, 2 Kan. App. 638, Syl. ¶ 1, 42 P. 935 (1895).  This language was quoted with approval in *Harpster v. Reynolds*, 215 Kan. 327, 330, 524 P.2d 212 (1974), and *Curiel v. Quinn*, 17 Kan. App. 2d 125, 129, 832 P.2d 1206, 1209 (1992), quoted *Harpster*'s quotation of *Investment Co. v. Jones*, calling it *Harpster*'s holding.

9

cases, *Turner*[16] and *Harpster*.[17] *Turner* arose after a judgment for $511.95 had been entered in 1870 in favor of Crawford against Turner and two judgments totaling $261.65 had been entered in 1871 in favor of Turner against Crawford. Crawford brought an action to have the Turner judgments applied in partial satisfaction of Crawford's judgment. Turner claimed he had assigned his judgments to Hadley & Glick, but the court ruled the assignment did not make any difference. The Kansas Supreme Court stated:

> Crawford's claim and judgment existed prior to the Turner judgments, [and] prior to the said assignment to Hadley & Glick . . . . Turner could therefore not assign his judgments, nor the claims upon which they were rendered, nor incumber such claims or such judgments with attorney's liens, or any other kind of liens, so as to defeat Crawford's right to have his judgment or his claim compensate and pay the Turner judgments or claims. A judgment is not like negotiable paper. It may be assigned, but will still be subject to all the defenses, counter-claims, or set-offs which the judgment debtor might, at the time of the assignment, have against it. This right of Crawford to have his judgment compensate and pay the Turner claims and judgments existed from the time the Crawford judgment was rendered down to the present time, and still exists.[18]

*Harpster* arose when a judgment creditor of Reynolds sought to attach Reynolds's wages by garnishing his employer, a trucking company. The evidence established that the employer advanced money to a driver such as Reynolds before each trip. When the

---

[16] *Turner v. Crawford*, 14 Kan. 499, 1875 WL 1384 (1875).

[17] *Harpster v. Reynolds*, 215 Kan. 327, 524 P.2d 212 (1974).

[18] *Turner*, 14 Kan. at 503, 1875 WL 1384 at *2.

10

driver returned, he made a full accounting of his expenses and his wages were determined on a mileage basis.  If after the accounting, there was a balance due the driver, he was paid by check.  If there was a balance in favor of the employer, the driver was paid nothing and stood indebted to the trucking company.  At the time the garnishment was served on the employer and on the date of its answer, it claimed that it did not owe Reynolds any wages, and that Reynolds owed money to the trucking company.  The district court held that no money was attached by the garnishment.  The garnishing creditor appealed, raising the issue of whether the trial court erred in allowing the garnishee-employer to set off the defendant's indebtedness to the garnishee-employer that was incurred after the garnishment was served and before the answer was filed.  The Supreme Court affirmed because the evidence showed the employer owed no money to Reynolds.  Reliance was placed on K.S.A. 60-719, which the court noted provides "that when the garnishee claims that he is not indebted to the defendant for the reason that the defendant is indebted to the garnishee, or that the indebtedness due to the defendant is reduced thereby, the garnishee is not discharged unless and until he applies the amount of his indebtedness to the defendant to the liquidation of his claim against the defendant."[19] The court reasoned that "[t]he employer should be permitted to claim the usual offsets in the usual way where the offsets are actually applied against the employee's wages as

---

[19] *Harpster*, 215 Kan. at 332, 524 P.2d at 216.  Note:  The statute, unchanged since it took effect in 1964, actually says "he or she" at each place where the court used "he."

11

required by K.S.A. 60-719."[20]

On the other hand, Liberty Bank contends that under Kansas law, the assignment of the Iowa Judgments against Meyer did not give the Christie Parties an interest in the Federal Judgment. According to Liberty Bank, the Iowa Judgments represent nothing more than a right to pursue Meyer and Pratt; the assignments of the judgments did not provide the Christie Parties with either a lien in the assets of Meyer or a right to set the Iowa Judgments off against the amounts the Christie Parties owed to Meyer under the Federal Judgment.[21] The Court agrees that under Kansas law, the entry of a judgment does not give the judgment creditor a lien on the personal property of the judgment debtor. But the Settlement Parties are not claiming a judgment lien.

As authority for the proposition that the Christie Parties may not offset the Iowa Judgments against the Federal Judgment, Liberty Bank relies on the principle of Kansas law that offset is an equitable doctrine; "[o]ffset of one judgment against another is simply not a right but is a matter of grace."[22] Three Kansas cases where offset was denied are cited in support, but they are factually so different from Liberty Bank's situation that they suggest no reason why offset should be denied in this case.

The first case is *Mynatt*.[23] With respect to the issue of offset, the question on

---

[20] *Id.*, 215 Kan. at 333, 524 P.2d at 216.

[21] Doc. 332.

[22] Doc. 332 at 4.

[23] *Mynatt v. Collis*, 274 Kan. 850, 57 P.3d 513 (2002).

12

appeal was whether the trial court erred in denying equitable offset when the judgments were not mutual, since one was against corporate officers and the other was against the corporation. The court found that the district court properly denied setoff based upon the lack of strict mutuality.[24] Mutuality is not an issue in this case.

The second case is *New Dimensions Products*,[25] where the trial court found in favor of a licensor which brought suit against a licensee for breach of a licensing agreement, and denied the licensee's request for offset of the amount that the licensee claimed the licensor owed it for the cost of inventory. The court had found that the licensee should not benefit from its own breach of the licensing contract. The appellate court affirmed under the clean hands doctrine. The Stipulated Facts in the case before this Court provide no basis to find that the Christie Parties lack clean hands.

The third case is *Carson*.[26] In that case, in July of 1978 Johnson had assigned to Collingwood a $5,000 interest in a potential future judgment. In 1980, a judgment was entered for Johnson against Waits for $5,000 and for Waits on its counterclaim against Johnson for $3,336. Waits contended that the judgments should be offset against one another, but the court denied the request, finding that Collingwood as the assignee of $5,000 of the judgment Waits owed to Johnson should be given priority. This case

---

[24] *Id*. at 873-82.

[25] *New Dimensions Prods., Inc. v. Flambeau Corp.*, 17 Kan. App.2d 852, 861-62, 844 P.2d 768 (1993).

[26] *Carson v. Chevron Chem. Co.*, 6 Kan. App.2d 776, 792-93, 635 P.2d 1248 (1981).

13

supports the position that the third-party assignments made by Meyer and Pratt prior to April 11, 2011, could be given priority over the setoff of the Iowa Judgments, but the Settlement Parties agreed to that result in the Settlement Agreement and Liberty Bank has not challenged this priority.

To summarize, Liberty Bank's position is that under settled Kansas law, setoff is not allowed as a matter of right. In its briefs, Liberty Bank does not state why setoff should not be allowed in this case, or otherwise address the question of priority. At oral argument, Liberty Bank argued that as a garnishor, it stepped into the shoes of its judgment debtor, Meyer, and in that capacity, had the right to challenge the offset on the ground that the Federal Judgment against the Christie Parties was based upon fraud, making offset inequitable. But after reviewing the Tenth Circuit's opinion[27] affirming in part the District Court's judgment in Case no. 07-CV-2230, and the District Court's opinion[28] following remand, the Court does not find that the Federal Judgment was based upon fraud committed by the Christie Parties. Further, the Stipulated Facts do not include evidence relating to inequitable conduct by the Christie Parties.

During oral argument, Liberty Bank's counsel also contended that K.S.A. 2011 Supp. 60-738[29] supports the bank's position that offset should not be allowed because that

---

[27] *Meyer v. Christie*, 634 F.3d 1152.

[28] *Meyer v. Christie*, 2011 WL 2847463 (D. Kan. July 15, 2011).

[29] The Court is considering here the version of this statute that was in effect in May 2011 when the garnishments occurred, not the current version, which was enacted in 2012, *see* 2012 Kan. Sess. Laws 465-66 (ch. 68, § 3).

garnishment statute places upon the garnishee (Christie and Debtor) the burden to prove offset, which they allegedly have not done.  K.S.A. 2011 Supp. 60-738 provides in relevant part:

> (a) No later than 14 days after the garnishee makes the answer and the clerk or the garnishee sends it to the judgment creditor and judgment debtor, the judgment creditor or judgment debtor, or both, may file a reply disputing any statement in the answer of garnishee. . . .  The party filing the reply shall notify the court and schedule a hearing on the reply to be held within 30 days after filing the reply.
> (b) At the hearing, the court shall determine and rule on all issues related to the reply.  The burden of proof shall be upon the party filing the reply to disprove the statements of the answer, except that the garnishee shall have the burden of proving offsets or indebtedness claimed to be due from the judgment debtor to the garnishee.

In this case, Christie and Debtor filed answers to Liberty Bank's garnishments stating they were not indebted to Meyer because of offset.  Under K.S.A. 2011 Supp. 60-738, Liberty Bank had 14 days after the garnishees' answers were made and sent to it to file a reply challenging the availability of offset under the Kansas garnishment procedure. There is no reply by Liberty Bank in the record.  Liberty Bank's reliance on K.S.A. 2011 Supp. 60-738 comes too late.

The Court finds the position of the Settlement Parties to be fully supported by Kansas law.  Under those authorities, because the Iowa Judgments were assigned prior to Liberty Bank's garnishments and because Kansas law provides that offsets must be satisfied before the discharge of the garnishee can occur under K.S.A. 60-719, the offsets of the Iowa Judgments against the Federal Judgment had priority over Liberty Bank's

15

rights as a garnishor. On the other hand, the Court finds Liberty Bank's arguments

establish that offset is a discretionary equitable remedy, but without showing why offset

should not be allowed in this case.

The Court's additional research provides further support for the position of the

Settlement Parties. The *Mynatt* case, cited by Liberty Bank, includes the following

summary of Kansas case law regarding the setoff of judgments.

> From the Kansas cases cited by the parties, we are able
> to synthesize the following general precepts are applied by
> Kansas courts. First, setoff requires mutuality, meaning that
> the same parties owe a sum of money to each other. There
> must be at least two distinct debts or judgments that have
> matured at the time of the motion for setoff. The entities
> indebted to one another must both be parties to the litigation.
> In addition, the parties' judgments or debts must coexist, *i.e.*,
> both must be determined, presently due, and owing at the time
> of setoff. A district court need not conduct a postjudgment
> evidentiary hearing unless it is clear mutual coexisting
> judgments are involved. Further, the party seeking equitable
> setoff must demonstrate equitable grounds for its application.
> The setoff must not prejudice intervening rights. Moreover,
> an equitable setoff will not be upheld on appeal where it
> contradicts public policy. Finally, equitable setoff is not a
> legal right, but is a matter of grace, and the question whether a
> setoff should be decreed rests in the sound discretion of the
> court to which the application is made.[30]

In this case there are none of the circumstances identified above which would preclude

offset. There is mutuality. The Christie parties owe money to Meyer under the Federal

Judgment and Meyer owes money to the Christie Parties under the Iowa Judgments. All

---

[30] *Mynatt*, 274 Kan. at 881, 57 P.3d at 534-35.

of the judgments are mature and owing at the time of setoff. The parties holding the offsetting judgments are parties to both the Federal Litigation and the Settlement Agreement.

There are equitable grounds to allow the setoffs. Setoff is the heart of the Settlement Agreement. All the parties holding and having liability under the offsetting judgments have agreed to offset in full as a means to settle their disputes. Debtor moved for approval of the Settlement Agreement, and this Court has found the Settlement Agreement to be fair and equitable.[31] Kansas public policy encourages settlements,[32] and settlements are favored in bankruptcy.[33]

Liberty Bank is essentially claiming that it has an intervening right which bars the setoff. The meaning of intervening rights that preclude setoff is illustrated by *Alexander*.[34] In that case, Clarkson obtained a judgment against Alexander, and assigned it to Cowley National Bank, subject to an attorney's lien. Thereafter, First National Bank obtained a judgment against Clarkson, and the bank assigned the judgment to Alexander. Alexander then sought to offset the judgment assigned to him against the Clarkson judgment. The Kansas Supreme Court held that offset would not be allowed. The judgments were not mutual; although the judgment against Clarkson had been assigned to

---

[31] Doc. 246 at 10-13.

[32] *Bright v. LSI Corp.*, 254 Kan. 853, 858, 869 P.2d 686 (1994).

[33] 10 *Collier on Bankruptcy* ¶ 9019.01 at 9019-2 (Alan N. Resnick & Henry J. Sommer, eds.-in-chief, 16th ed. 2014).

[34] *Alexander v. Clarkson*, 100 Kan. 294, 164 P. 294 (1917).

17

Alexander, Clarkson had assigned his judgment against Alexander to Cowley National Bank. The rights of third parties — Cowley County National Bank, the assignee of the judgment against Alexander, and the attorneys who held a lien on that judgment — had attached before the setoff was requested.[35] These third-party interests were the intervening rights which precluded setoff.

Liberty Bank is not the holder of intervening rights which would preclude setoff of the Iowa Judgments against the Federal Judgment. Liberty Bank's rights are against Debtor and Christie as the garnishor of their obligations to Meyer. When the garnishments were served, Christie and Debtor answered that they owed nothing to Meyer because their obligation to him under the Federal Judgment was subject to setoff. That setoff right arose from the acquisitions of the Iowa Judgments before the garnishments were served. The *Harpster* case, discussed above, and K.S.A. 60-719, discussed in *Harpster*, establish that this right to satisfy the Federal Judgment by setoff has priority over Liberty Bank's interest as a garnishor.

The Court therefore concludes that Liberty Bank's interest in the Federal Judgment resulting from its garnishments was subject to the offset of the Iowa Judgments against the Federal Judgment.

**SINCE LIBERTY BANK'S INTEREST IN THE FEDERAL JUDGMENT IS SUBJECT TO THE OFFSET OF THE IOWA JUDGMENTS, LIBERTY BANK'S INTEREST IS NOT IMPAIRED BY THE "OFFSET IN FULL" PROVISION OF THE SETTLEMENT AGREEMENT.**

---

[35] *Id.*, 100 Kan. at 296.

18

The second issue to be determined is whether, in light of the priority of Liberty Bank's interest in the Federal Judgment as determined by this Court, Liberty Bank's interest is impaired by the Settlement Agreement. The Court concludes that it is not.

As of May 16, 2011, the date Liberty Bank's garnishments were served on Christie, Meyer owed $6,883,706.03 on the Iowa Judgments. By May 19, 2011, when the garnishments were served on Debtor, that amount had increased to $7,505,183.85, and by May 31, 2011, the date the answers to the garnishments were filed, the amount was $7,543,500.43. The amount of the Federal Judgment that was affirmed by the Tenth Circuit's mandate on April 25, 2011, was $7,170,703. The parties agree that the Federal Judgment was subject to the following interests that were superior to the Christie Parties' offset rights: (1) attorney liens, estimated by Liberty Bank to be approximately $2.9 million; (2) assignments by Pratt of $2,286,000; and (3) assignments by Meyer of $723,508.71. When these interests are subtracted from the Federal Judgment, the balance is approximately $1.3 million. If Meyer's half of the Federal Judgment is considered separately, with only one-half of the attorneys fees and only Meyer's assignment subtracted, the remaining balance is approximately $1.4 million. Under either scenario, the value of the Iowa Judgments, $6,883,706.33 as of May 16, 2011, and $7,505,183.85 as of May 19, 2011, greatly exceeded the amount remaining due on the Federal Judgment after payment of the higher priority claims for attorneys' fees and the third party assignments. Consequently, Liberty Bank's garnishees, Debtor and Christie, owed

19

nothing to Meyer when the garnishments occurred, and therefore owed nothing to Liberty Bank as a result of the garnishments.

The "offset in full" language appears to have been included in the Settlement Agreement to provide a basis for full cross-releases of the Settlement Parties, even though the total face amounts of the Iowa Judgments exceeded the interests of Meyer and Pratt in the Federal Judgment after the superior interests were paid. Liberty Bank's argument is that the Settlement Parties cannot agree that Christie's and Debtor's obligations to Meyer under the Federal Judgment were satisfied by offset. But, as shown above, Liberty Bank's rights as the garnishor of Christie and Debtor were subject to prior rights, including Christie's and Debtor's rights to set off their liability under the Federal Judgment. Since Liberty Bank's garnishments were served after the assignment of Iowa Judgments having a value in excess of the garnishees' liability to Meyer under the Federal Judgment, Liberty Bank's interest is not an intervening right which limits the garnishees' offset rights. Liberty Bank as garnishor did not acquire rights in the Federal Judgment which are impaired by the "offset in full" provisions of the Settlement Agreement.

**THE COURT FINDS THE SETTLEMENT TO BE FAIR AND EQUITABLE.**

In its Memorandum Opinion and Judgment Approving Compromise and Settlement,[36] the Court previously found the Settlement Agreement to be fair and equitable. The only portions of that ruling that were reversed on appeal related to Liberty

---

[36] Doc. 246.

20

Bank: the District Court reversed the finding that Liberty Bank did not have valid garnishment liens and remanded for the purpose of determining the priority of those liens. Otherwise, the District Court found no error in this Court's ruling that the Settlement Agreement was fair and equitable.

When initially finding the Settlement Agreement to be fair and equitable, the Court relied upon findings that Liberty Bank's interests were not impaired for certain reasons that were rejected on appeal. The Court has now concluded that Liberty Bank's interests were not impaired for a different reason. The authorities and rationale supporting the Court's conclusion that the Settlement Agreement is fair and equitable remain valid.

**CONCLUSION.**

For the foregoing reasons, the Court approves the Settlement Agreement. The Court adopts and incorporates herein by reference its previous analysis of the fairness of the Settlement Agreement as stated in the Memorandum Opinion and Judgment Approving Compromise and Settlement that was filed on May 17, 2013,[37] as modified by the District Court's holding that Liberty Bank is the holder of valid garnishment liens, and as supplemented by the findings of fact and conclusion of law stated herein.

**JUDGMENT.**

The foregoing constitutes Findings of Fact and Conclusions of Law under Rules 7052 and 9014(c) of the Federal Rules of Bankruptcy Procedure, which make Rule 52(a)

---

[37] Doc. 246.

of the Federal Rules of Civil Procedure applicable to this matter.  Based on those findings

and conclusions, judgment is hereby entered granting the Motion of D.J. Christie, Inc. to

Approve Compromise and Settlement.[38]  As provided by Bankruptcy Rule 9021, this

judgment will become effective when it is entered in the docket under Bankruptcy Rule

5003.

**IT IS SO ORDERED.**

**# # #**

---

[38] Doc. 212.